"The relation between an agent for the sale of goods and his principal is fiduciary. The proceeds of goods sold, whether in form of money or notes or other security, belong to the principal. The relation is not that of debtor and creditor; and in case of the insolvency of the agent the proceeds would not go to the assignee, but would be subject to the paramount claim of the principal."

And in People v. Bank of Dansville, 39 Hun, 187, it was held that:

"If the identical money collected by the bank did not pass into the hands of the receiver, it makes no difference, for in some shape or form they went to swell the assets which came into his hands."

We think the well-settled rules established in the above cases, and in other cases to which reference might be had, make it clear, it seems to us, that the defendant Carpenter, before the assignment, and his assignee subsequently thereto, became chargeable with the proceeds of this bond in their fiduciary capacity as agents of the plaintiff, and that the referee was right in holding that the plaintiff might recover; and that the judgment recovered in this action was properly declared to be a first lien upon the funds in the hands of the defendant Carpenter, and that the judgment must be affirmed.

Judgment affirmed, with costs.

PUTNAM, J., concurs. HERRICK, J., concurs in result.

---

PEOPLE ex rel. CORRIGAN v. MAYOR, ETC., OF CITY OF BROOKLYN.

(Supreme Court, General Term, Second Department. December 2, 1895.)

OFFICE AND OFFICER—ABOLISHING OFFICE—RIGHTS OF VETERANS.

Under Laws 1892, c. 577, providing that no veteran of the war holding a position under a city government shall be removed except for cause, after hearing, such veteran cannot be deprived of his position by a resolution of the city council abolishing the office for economical reasons, and devolving the duties on another official, while he is ready to perform any part of the duties belonging to his office at such salary as the council may fix.

Appeal from special term, Kings county.

Application by Patrick H. Corrigan for writ of mandamus to compel the mayor and common council of the city of Brooklyn to reinstate relator in the position of keeper of the Truant Home, from which he had been removed. From an order granting a peremptory writ to issue, defendants appeal. Affirmed.

The opinion of Mr. Justice BROWN at special term is as follows:

On March 29, 1886, the relator, by a resolution of the common council, was appointed "keeper of the Truant Home." Thereafter he was called and was known as "superintendent." On January 3, 1895, he was removed from such position by resolution of the same body, which is as follows: "Resolved, that the position of superintendent and farmer at the Truant Home be, and the same is hereby, abolished, from and after the first day of May, 1895, for economical reasons, and that the incumbents of the several positions be, from and after said date, dismissed, for the same reasons. Resolved, that the duties heretofore performed by the superintendent at the Truant Home be, from and after the first day of May, 1895, devolved upon Eugene Martyn, a teacher of said home. Resolved, * * * that John Eiseman be, and he hereby is, appointed janitor of the Truant Home, and that he receive for his services as such janitor the sum of four dollars per day. * * *"

The relator, being a veteran of the war, and also a volunteer fireman, was protected from removal, except for cause, after a hearing. Laws 1888, c. 119; Laws 1892, c. 577. The purpose and force of statutes of the character of those invoked by the relator have been set forth and explained by the court of appeals in People v. Board of Fire Com'rs of City of New York, 72 N. Y. 445, and the statutes referred to have recently been applied in several cases in this court. The intent of these and similar statutes, it was said in the case cited, was "to continue in the subordinate positions of the city government those who had proved themselves faithful and trustworthy, as well as competent to discharge the duties of their stations"; and the cause assigned for removal must be personal to the incumbent of the position. An officeholder has, however, no right to have the office retained for his benefit, and hence he may be removed when the office is abolished, or when the appropriation for payment of the salary is exhausted. But, as was said by Justice Cullen in the case of the clerks in the city clerk's office, to deprive a person of his employment by the abolition of his position, the abolition must be real and substantial, and not formal and nominal. Applying these rules to this case, the facts stated in the moving papers may be examined. The resolution of the common council must be read as a whole. It abolished the office of keeper, and created that of janitor. It stated this was done for "economical reasons." If the effect of this was to substitute one man for another in the performance of the same duties at a reduced salary, it would, without doubt, fall within the prohibition of the statute, unless the incumbent refused to accept the reduced pay. The object of the statute being, as was said by the court of appeals, to continue in office faithful, trustworthy, and competent persons, it would not be a sufficient cause for their removal that another person could be procured willing to serve at a lower rate of pay. The incumbent should have an opportunity to remain in office at the reduced salary, and thus the "economical" spirit would prevail, and the city retain an experienced and faithful servant. But to remove an incumbent, without a hearing, because the appointing officers had determined to reduce the salary of the office, would be to defeat absolutely the plain purpose and intent of the law. The decision of this case therefore rests on the determination of the question whether there has been an honest and substantial abolition of the office, or whether there has been merely a change of names, and a devolution of the duties of the office upon a new appointee. So far as there is any conflict in the facts of the case upon this motion, those stated in the opposing affidavits must be taken as true. People v. Cromwell, 102 N. Y. 477, 7 N. E. 413; Code Civ. Proc. § 2070. By the resolution of the common council, the duties of the relator were, after his discharge, to be performed by Eugene Martyn, a teacher of the said home. The rela-

tor swears his duties were as follows: "It was my duty to make requisition for supplies for said home, and these were furnished through the department of city works, under contracts made by that department. I received all supplies, and certified to that department the correctness of all bills for the same. I also certified to the monthly pay roll of the institution, which contained the names of the employés of the home, and the sums due each for their work. There was a teacher in said home, named Eugene Martyn, and an assistant teacher. These two teachers were appointed by the common council of the city of Brooklyn. The other employés of the said home are enumerated in a schedule hereto annexed, and marked 'A,' and these latter were employed by me, under the direction of the committee of the common council having the matter of the home in charge. I directed and superintended the labors of all employés, except the teacher and assistant teacher, and even these latter reported to me at their coming and going. I was in general charge and custody of the home and its inmates." He further swears: "Since my departure from said institution, John Eiseman has entered said home, and has performed that part of my duties which consisted in the general charge of the inmates and employés of the said home, which is by far the largest part of said duties, while Eugene Martyn, said teacher, has done that part which consisted of making requisitions for supplies, receipting for the same, and certifying bills and pay rolls." Eugene Martyn swears: "That the statement in the relator's affidavit contained on the fourth page thereof, 'that on the 9th day of May, 1895, John Eiseman was appointed by the common council in the place of said relator, and is now performing the duties formerly performed by him,' is untrue; that during the superintendency of the said Corrigan, that the duties that would naturally devolve upon a janitor of the institution were rarely if ever performed by the said superintendent; that the work may have been done under his direction, but was usually performed by the laborers or the boys; that the only work the superintendent did during his superintendency was the making of requisitions for supplies, certifying to the monthly pay rolls of the institution, and the hiring of domestic servants; that after the discharge of the said relator, pursuant to the resolution of the common council, as set forth in affidavit of said relator, the aforesaid duties devolved upon deponent, and have ever since said time been performed by deponent." Henry Vollmer, a member of the common council, swears: "That the statement in the relator's affidavit, contained on the fourth page thereof, 'that on the 9th day of May, 1895, John Eiseman was appointed by the common council in the place of said relator, and is now performing the duties formerly performed by him,' is untrue; that during the superintendency of the said Corrigan, that the duties that would naturally devolve upon a janitor of the institution were rarely if ever performed by the said superintendent; that the work may have been done under his direction, but was usually performed by the laborers or the boys; that the only work the superintendent did during his superintendency was the making of requisitions for supplies, certifying to the monthly pay rolls of the institution, and the hiring of domestic servants; that after the discharge of the said relator, pursuant to the resolution of the common council, as set forth in affidavit of said relator, the aforesaid duties devolved upon deponent, and have ever since said time been performed by deponent." It will be observed that the quotations from the affidavits of Martyn and Vollmer are almost identical in language, and that each swears he is performing the duties performed by the relator during his incumbency of the office. Of course, both affidavits cannot be true, as one expressly contradicts the other; and, if I was permitted to determine the facts of the case, I should reject both of them. Martyn's affidavit is, however, consistent with the resolution of the common council, which devolved the duties of the office upon him, and the relator does not deny that a part of the duties of the office are now performed by Martyn. But there is no substantial contradiction that the relator was the janitor of the home. It is conceded that the duties now performed by Eiseman were performed under the direction of the relator. He was originally designated "keeper" of the home. Afterwards he became known as "superintendent," and it is not denied that he had general charge of the institution, and that

the duties of janitor were within his office. The common council could have devolved some of his duties on subordinate officers, or divided them, and given a portion to a new appointee; but as long as the relator was willing to perform any part of the duties originally belonging to the office, at such salary as the common council should fix, he was protected from removal, except for cause and after a hearing. Such construction only will give due effect to the intent of the law. The relator is entitled to be reinstated as janitor, and an order may be entered accordingly.

Argued before DYKMAN and PRATT, JJ.

A. G. McDonald, for appellants.

Charles J. Patterson, for respondent.

PRATT, J. This is an appeal from an order granted at special term directing a peremptory writ of mandamus to issue, commanding the defendants to reinstate the relator to the position held by him, and also from an order denying the motion made by defendant for a reargument of the original motion. We think the opinion filed below at special term fully answers the contention made by the appellants, and we therefore recommend that the same be affirmed upon that opinion, and also that the decision upon the motion for a reargument be affirmed, with costs.